# United States District Court
# District of Columbia

**Nathan A. Saunders**
13511 Yellow Poplar Lane
Brandywine, Maryland 20613,
                              Plaintiff


Vs.

Case: 1:18-cv-01438  Jury Demand
Assigned To : Kelly, Timothy J.
Assign. Date : 6/18/2018
Description: Pro Se Gen. Civil F Deck

**Muriel Bowser, Mayor-Washington DC**
DISTRICT OF COLUMBIA,
441 4th Street NWWashington,
DC 20001

**Amanda Alexander, Acting Chancellor-DCPS**
1200 First St. NE
Washington DC. 20002

**JURY**              **TRIAL DEMAND**

**Jane Spence,**
1200 First St. NE
Washington DC. 20002
Personally and in her official capacity

**David Pinder,**
1200 First St. NE
Washington DC. 20002
Personally and in his official capacity

**Eric Fraser,**
1601 16th St. SE
Washington DC. 20020
Personally and in his official capacity

**RECEIVED**

JUN 1 8 2018

Clerk, U.S. District and
Bankruptcy Courts

**Tesha Cunningham-Nixon,**
1601 16th St. SE
Washington DC. 20020
Personally and in her official capacity

**Tameka McKenzie,**
1601 16th St. SE
Washington DC. 20020
Personally and in her official capacity,
                    Defendants

# COMPLAINT

# Introduction

1.   Plaintiff Nathan A. Saunders is a licensed and certified DC Public
Schools Teacher.  In the process of performing his lawful duties, he has been
and continues to be harassed, deceived, and coerced to change and alter
grades for 12th-grade students at Anacostia SHS in Washington DC.  He
has resisted defendants efforts for which he has been penalized.  The
intended recipients of the grade changes were chronic absent students and
students with unique relationships with administrators.  They did not meet
the requirement of seat hours per the DC Municipal Regulations (DCMR).
It states a "Carnegie Unit" - one hundred and twenty (120) hours of
classroom instruction over the course of an academic year is required.
Defendants attempted to structure one student, A.W., into the top 10% of
the graduating class by getting Plaintiff to change her grade.  Other
hardworking, diligent students would have lost opportunities as a result.
Another teacher confided she was subjected to the same scam by the same
defendants concerning the same student.  Defendants' actions, if
unaddressed, could cause Anacostia SHS to lose its school accreditation.

2.  Plaintiff asserts his rights in law to restrain and prohibit defendants from

further engaging in the actions contained herein.  He demands a jury trial.

The improper activities carried out by his direct supervisors (Fraser,

Mckenzie, and Cunningham-Nixon) have been secreted, supported, and

otherwise covered up by senior school officials (Alexander and Pinder).  The

top school officials have failed to train and discourage the conduct of their

subordinates which now requires the honorable court to intercede.

3.  Graduation rates are to a determinant in school administrators

professional evaluations including the DCPS Chancellor.  Defendants self-

interest produces enhanced opportunities for personal advancement,

notoriety, and bonus salaries.

4.  Defendant Mayor Muriel Bowser has publicly bragged about the

increased graduation rates and has used the statistics in her Mayoral

campaign literature.  While she has reiterated that students should attend

school, she has done little to curb the egregious practices described herein.

The increased graduation rates are often the result of educational

malpractice such as flagrant grade changing by administrators.

Administrators pressured teachers to change grades to raise graduation

rates.  Students, most of whom rarely attended classes, have been issued

DCPS High School Diplomas without being proficient with the fundamental skills necessary to thrive in society. Anacostia SHS student body is 1% proficient in Math and 4% proficient in English!

5.    Defendants embrace empathic and apologetic methodology to address the needs of this high poverty community. Defendants default to "just give it (high school diploma) to them." Plaintiff, a native Washingtonian from the East of the Anacostia River community, argues the best defense against poverty starts with solid fundamental educational skills, being on time and in the right place, and rejecting violence as a way of life.

6.    Schools administrators, who are not classroom teachers, have supervisory and evaluative authority over classroom teachers via "IMPACT"-the teacher evaluation system. Bad actors use IMPACT as a weapon to lower the teacher's score especially the "CSC" or Commitment to School and Community and other areas. Teachers, who find themselves at odds over grade changes,  are punished with pay stagnation, loss of professional opportunities such as professional development, loss of extra duty assignments with attendant pay, among other penalties.   Defendants retaliated act against Plaintiff by doing the following actions including

changing his teaching assignment, change in job location, removing school security assistance, loss of teaching supports, etc.

7.  Defendants use the force of IMPACT to manipulate the teachers' hand to throw the rock and shatter the window then blame the resulting damage squarely on the teacher.

8.  Defendants promoted specific violence scenarios with Plaintiff to encourage his consent. Students were sent to his classroom with senior clearance forms and the message "Saunders is the only one standing in your way to graduate!" Security was stationed elsewhere in the building while the students threatened Plaintiff with imminent violence if Plaintiff did not change grades and sign the student's graduation form.

9.  DC law is unambiguous about high school graduation requirements, compulsory school attendance, and seat hour stipulations. The law does not distinguish a lesser education experience for needy children, black children, children living in SE Washington DC, children attending neighborhood schools, or children living East of the Anacostia River. Plaintiff argues before this honorable court for equal protection of the law and due process on behalf of himself and the students he teaches.

# The Parties

10.  Plaintiff Nathan A. Saunders is a District of Columbia Public Schools teacher at Anacostia Senior High School.  He has approximately 20 years of teaching service, holds a Masters Degree in Law and Ethics plus additional graduate hours, and possesses a valid Secondary Social Studies DC Teachers License in good standing.   Plaintiff is the most recent Past President of the Washington Teachers' Union and served in numerous capacities in Labor Unions, Not for Profit, Academic, and other executive positions.  See attachment 1.

11. Plaintiff teaches DC History and Government, US Government, and Advanced Placement US Government.  The courses counted in Carnegie units are required for students to earn a DC High School Diploma.  A passing grade and 120 seat hours are necessary for successful completion according to the DC Law.  Plaintiff  Nathan Saunders taught 12th grade DC History and Government, Advanced Placement US Government, and regular US Government during the time of the improper action.  He also taught other social studies courses which required a certified teacher during the Extended Credit Recovery (ECR) after school program SY16/17.

12. Mayor Muriel Bowser is the Chief Executive Officer of the District of
Columbia Government.  The DC Public Schools falls under Mayor Bowser
as a result of mayoral control granted by the Public Education Reform and
Amendment Act of 2007.  Defendant Bowser was notified of the gross
mismanagement previously and a notice of claim was filed.  See Attachment
April 4, 2018 letter to Mayor Bowser.

13. Defendant Amanda Alexander serves as Interim Chancellor whose duties
and responsibilities are defined by the Public Education Reform and
Amendment Act of 2007.

14. Defendants Spence and Pinder are central administrative DCPS
employees who either created the SY15-16 DCPS Secondary School
Grading and Reporting Policy ("Grading Policy") or supervise the Principal
and Assistant Principal(s) of Anacostia Senior High School.

15. Defendants Fraser, Mckenzie, and Cunningham-Nixon are the Principal
and Assistant Principals of Anacostia SHS respectively.  Cunningham-
Nixon is the 12th-grade administrator.

16. No students are defendants in this cause of action.  Initials have been
used to protect their identities.  While some initials are similar like S.A.H.,
and S.H., they are two different young ladies.

## Jurisdiction and Venue

17. Plaintiffs' constitutional claims arise under the U.S. Constitution and are brought pursuant to 42 U.S.C. § 1983, which authorizes constitutional actions against District of Columbia officials acting under the color of D.C. law, and pursuant to 28 U.S.C. § 2201, which authorizes actions for declaratory judgments.

18. Because Plaintiffs' claims arise under federal law, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

19. Plaintiff also challenges Defendants' grade tampering and Defendant's Jane Spence's SY15-16 DCPS Secondary School Grading and Reporting Policy ("Grading Policy") requirements as arbitrary and capricious, in excess of statutory authority, contrary to constitutional right, power, privilege or immunity, and without observance of procedure required by law, in violation of the D.C. Administrative Procedure Act, D.C. Code § 2-510.

20. This Court may exercise supplemental jurisdiction over Plaintiffs' D.C. Claim pursuant to 28 U.S.C. § 1367.

21. Venue is proper in this judicial district pursuant to 28 U.S.C. §
1391 because the events and omissions giving rise to Plaintiffs'
constitutional and statutory claims occurred in this district, and this
Court has personal jurisdiction over Defendants.

## School Year 2016/2017

22. Anacostia Senior High School is an urban Title I school with specialized
resources for its large percentage of low-income students and special
education students. Anacostia SHS graduation rate in 2015 was 46%; 2016
was 42%, and 2017 was 59%.   Former Chancellor Kaya Henderson made
certain those high schools with declining high school graduation rates all had
new principals in past school years.  Anacostia posted a 17% increase in the
graduation rate which was the highest in the city.  Its 69.8%  attendance
violations rate for graduating seniors made it the worst culprit of pushing
unqualified high school graduates out the door.

23. During the SY 16/17, Plaintiff and Defendant Cunningham-Nixon
disagreed over difficult obstacles she installed that impeded Plaintiff's right
to grade students accurately.   She stated a student could not be failed unless
a "Student Improvement Plan," "Call log," or a "Make up work packet"
among other procedural items, were completed.  Saunders asked for the

origins of these new rules. Cunningham Nixon vacillated but finally emailed 1 page of what Plaintiff subsequently learned as the SY15-16 DCPS Secondary School Grading and Reporting Policy ("Grading Policy") created by Defendant Jane Spence.

24. Plaintiff indicated just because something is titled "policy" on the cover does not mean it is legal policy. The 68-page document did not come from the Mayor, DCPS Chancellor or the State Board of Education which caused suspicion. If read literally, its massive changes would produce poorly prepared students with DCPS high school diplomas in hand. If read and interrupted as Defendant Cunningham-Nixon has done, the "Policy" violates DCMR seat hour requirements, students need to be proficient in the subject matter, and a teacher's right to grade. Also, this policy was not vetted.

25. Teachers were not trained in its proper application. There was no evidence it had met the requirements of the DC Administrative Procedures Act. Plaintiff had various discussions with Defendant Cunningham-Nixon about "forms based management" or "checking the boxes" and doing little else to curb chronic absenteeism.

26. Students listed in this complaint have massive absences since 9th grade, and some went back to elementary school. Their academic records are

hodgepodge check marks on pages, but little else was done to solve the fundamental problems.

27. Defendants did not welcome Plaintiff's commentary.   Cunningham-Nixon, Mckenzie, and Fraser treated Plaintiff differently than other employees.   Opportunities afforded other teachers were not extended to Plaintiff.   A hostile work environment was severe and recurring while affecting Plaintiff's ability to do his job.

28. Chronic absenteeism is possibly the top issue obstructing student academic progress at Anacostia SHS.   Many students are sent to Anacostia SHS due to chronic absenteeism at their former school.   Saunders brought the subject up at internal union meetings and with colleagues.

29. DCPS is a $1 Billion plus agency with immense resources even at the school level which the Defendants were not managing or coordinating. Defendants earn between $135,000 to $275,000 per year and do not teach students daily.   They, individually, have one or more Masters Degrees and some have Doctoral Degrees.   They are appropriately resourced and supported to solve the problem as opposed to "checking the box."   Plaintiff challenged Defendant Fraser in an open all building meeting about

advocating for our student population.  He appeared embarrassed but took no action.

30. Defendants Alexander, Spence, and Pinder woefully lacked in support and oversight of grading, excessive absences, the graduation of ineligible students and the Extended Credit Recovery (ECR) program.  They made matters worse at the local school level and were not problem solvers.  They did not communicate, train, monitor or provide tools.  Superintendent Pinder, in particular, was problematic.  Pinder constantly misinformed the staff.  He stated, "If a student punches a teacher in the face and the student has an IEP, there is nothing DCPS can do!"  It was his latest demoralizing statement to teachers which was unfounded and induced fear.

31. Plaintiff actively addressed the attendance issue at Anacostia Senior High School.  Plaintiff maintained an agreement with his students.  If students attended class and earnestly attempted to learn the content, the student was guaranteed to pass the course.  Saunders assured students he knew many different ways to teach the material and together they could learn it.  Conversely, if the students do not attend class, their grades will reflect as much.

32. Plaintiff experienced three effects of chronic absenteeism. The first being the chronically absent student did not become proficient in the content knowledge or participate in class discussions. The second effect was when the student finally "dropped in to school" they were so far behind in everything including classroom rules and procedures that the Plaintiff had to constantly retrain them with "do not bring food to class", "get off the mobile telephone", "no cursing" or "get your folder out and take notes" comments. It took valuable classroom time from all students. The third effect was chronically absent student lowered the bar. Students regularly attending felt they could not fail if they just showed up to class as they always saw chronically absent students pass. Many would not apply themselves.

33. Plaintiff agreed to stay after school to assist via the ECR-Extended Recovery Program to teach students. It was a paid after-school program position. Plaintiff knew some of the students in the program from the day school. They took his class and failed as they did not attend and violated the seat hour requirement. All were chronically absent students, yet they were admitted to ECR as if they attended class during the day and somehow failed to learn the content. The students never went to class; therefore, they did not take tests, participate in class, or learn the content.

34. Plaintiff resigned from the program soon after starting. The same students who were chronically absent in the day school program remained chronically absent in the ECR after school program. Equally important the students, because they were chronically absent in the day school, did not meet the seat hour requirement and should not have been enrolled in the ECR program.

35. After DCPS received plaintiff's letter of resignation, Defendants acting as Anacostia SHS created and processed grades for students as if Plaintiff taught them. Plaintiff did teach or grade those students!

36. Based on knowledge and belief, a non certified and non licensed teacher in social studies taught those students.

37. His professional credentials and certifications unbeknownst to him were commandeered and used fraudulently by the Defendants. See attachments #3 and #4.

38. Students challenged Plaintiff's system sometimes violently although it was aligned to the law. J.T., an African American male, had a chronic absenteeism problem. He often postured and promised to visit violence upon Plaintiff if Plaintiff failed him. He engaged in classroom desk flipping with his threats designed to intimidate Plaintiff. Plaintiff reported him to

school security; however, copies of the security incident report were not provided as requested.

39. In addition to being cursed out more times than Plaintiff can remember, two transgressors stood out. They are E.W., a 12th grade - African American male student and S.A.H., a 12th grade - African American female student.

40. Both students stated Defendant Cunningham-Nixon told them they "could not be failed no matter what because this was Anacostia." In fact, student E.W. told Plaintiff he was doing a petition to get Plaintiff Saunders fired because of "this hard ass work and attendance shit." Student E.W., created a petition and other students reported student E.W. was in the senior lounge next door to Defendant Cunningham-Nixon office with the request in hand to get Plaintiff fired. Defendant Cunningham-Nixon later admitted she was aware of the petition but did not inform Plaintiff.

41. Student S.A.H. did more. She brokered a special relationship with Defendant Cunningham-Nixon whereby student S.A.H., would determine when Plaintiff Saunders next IMPACT teacher evaluation observation would happen. After being told by Plaintiff Saunders to complete her work and stop talking, S.A.H. exited the classroom. She returned with Defendant

Cunningham-Nixon in tow who then immediately began Plaintiff's IMPACT evaluation. During the Plaintiff's evaluation, student S.A.H. turned toward Defendant Cunningham-Nixon and stated: "Be sure to get that down, Ms. Cunningham." Defendant Cunningham-Nixon attempted to intimidate and bully Plaintiff with the IMPACT evaluation. Based on Defendant Cunningham-Nixon's comportment, inflection, and body language during the IMPACT evaluation, she was not objective.

42. Plaintiff complained in writing. See attachment #5. A meeting was held with Defendant Fraser who never reported his findings or took any action. Defendant Fraser appeared afraid of the students and not interested in planning or making any changes to the status quo. Defendant Fraser recently resigned from Anacostia SHS.

43. Ironically, students J.T., and E.W., witnessed the murder of Kevin Anthony Jackson, a recent Anacostia SHS student who was gunned down during the school day. The tragic incident occurred September 1, 2016, at 2:19 pm., a time when these students should have been in school. Students J.W. and E.W. ran into Anacostia SHS and withered in pain and grief outside in Plaintiff's hallway. The shooter and murdered student were both subject to compulsory education laws but were not in school!

44. DCPS Teachers are evaluated using the DCPS' IMPACT teacher evaluation system. Under the system, a teacher who receives less than an effective rating will not receive his/her annual step increase. A yearly step increase equals an addition to salary and retirement benefits. If the score is low enough, the teacher can suffer immediate termination.

45. Plaintiff's rating for school year 15/16 was "Effective." Plaintiff's rating for School Year 16/17 was "Developing" which is one level below the "Effective" rating. As a result, Plaintiff did not receive his annual increase thereby causing a hold on his salary and retirement benefits level.

46. The "Developing" status does not create an improvement plan criteria for the teacher as to definite, specific improvements to be made. It simply leaves the teacher in a state of limbo. It is a punishment zone. Plaintiff has received no information as to how to get out of the "Developing" category.

## School Year 2017/2018

47. The same issues of chronic absenteeism were abounding. Plaintiff, after extensive conversation with Defendants, concluded they had no plan to address chronic absenteeism which was crippling the school and its instruction. The school district has a policy of treating chronic absentees through a Response To Intervention (RTI) plan and Plaintiff pushed for

action particularly in the case of student C.D., a 12th grade, African American female.  Anacostia SHS was her third or fourth high school.  She was a popular but chronically absent student, who constantly interrupted instruction because she was "in the house."

48.  Plaintiff documented interactions in Aspen.  In a scheduled parent conference held the mother indicated she was trying to handle the student as well but the student did not come home at night, and therefore, the parent's influence appeared to carry little weight. During the meeting, Defendant Cunningham-Nixon did not communicate the urgency of the of the student's attendance issue to the parent.  It was as if Defendant Cunningham-Nixon was scared to tell the parent the truth.  It was wrong and disappointing.

49.  While not in the present of the parent, Plaintiff asked Defendant Cunningham-Nixon did she know what she was doing?  Plaintiff expressed his professional opinion.  Plaintiff demanded DCPS engage in the RTI process on behalf of the student. See attachment #6.  Plaintiff reviewed Aspen notes which indicated an RTI process was started earlier in student's C.D. high school career, but it was not actively managed and was disjointed at best.  It was almost unintelligible.  At the end of that semester, when grades were due, Plaintiff sent a separate note about the oddity of student

C.D.'s high scores in some of her classes and failing Plaintiff's class purely because she was not present in school.  Defendant Cunningham-Nixon ignored the issue when approached face to face.

50.  Based on information and knowledge, student C.D. was provided grades based on what she was "capable" of securing if she had actually attended classes and not what she accomplished for attending classes and producing work.  At another parent-teacher conference which included Defendant Cunningham-Nixon, student C.D.'s parent took off her earrings, shoes and attempted to fight Plaintiff for "f***ing with her daughter about her attendance!"  Parent was escorted out the building;  Defendants did not provide a copy of the security incident report or parent bar notice as requested.

51.  On April 3, 2018, another student, S.H., an African American female 12th grader, was a mid-year (third quarter) transfer into Anacostia SHS. She barged into Plaintiff's classroom during his duty-free lunch. She demanded her grade immediately then proceeded to destroy the classroom when her issue was not immediately addressed.  See attachment #7.  Plaintiff filed a police report.  Defendant Cunningham-Nixon recklessly sent the student to her next class without talking to the plaintiff or inspecting the

damage.  At the post suspension conference, her mother motioned she was

"crazy" by making circles around the mothers head as student S.H. talked.

52.  On June 1, 2018, Defendant Mckenzie followed Plaintiff to his car after

work hours entered and argued for a grade change for students O.B., S.H.,

and A.W.,  Defendants used radios, intercoms, emails, security staff  and

other DCPS tools under color of law to harass, intimated, and coerce

Plaintiff to change or alter grades.

53.  On June 4, 2018, S.H., and her mother met with Plaintiff and Defendant

Mckenzie about her course grade.  S.H., had another violent outburst and

had to be restrained by Dean Knox and removed from the meeting room.

She was a young lady who had a problem hearing she was not successful.

Her failure was directly related to chronic absenteeism.  S.H., did not meet

the seat hour requirement to earn the credit.  Although she was supposed to

be in anger management from the earlier episode, she could not control

herself.

54.  S.H. presented work the Plaintiff had never seen and made allegations

someone tampered with her folder.  Ultimately, S.H.'s grade was changed,

consistent with the email.  See Attachment #8.  Earlier it was revealed that

several students had unauthorized access to Plaintiff's locked classroom and

Plaintiff could no longer be confident that students' records previously protected under lock and key, had been secure. Defendants compromised testing protocols by allowing "special students access" to the Plaintiff's classroom and records. A security incident report was not provided to Plaintiff as requested.

55. Shortly thereafter, Plaintiff met with Defendant Pinder and provided him a copy of the letter concerning testing procedure and documenting the fact that student A.W., had unauthorized access to his classroom and the records of other students. Defendant Pinder did not attach a level of urgency and was not knowledgeable about necessary security protocols. See attachment #9. Plaintiff's right to view surveillance video was unreasonably controlled by Defendants.

56. Another student, A.W., is an African American female 12th-grade student who also has an absenteeism problem. She enjoys a special relationship with Defendants. She is liberally granted excused absences in Aspen attendance records. She is often in school but not in class and is marked as officially excused. In a June 4, 2018 meeting, Defendant Cunningham-Nixon stated A.W., had gained access to my locked classroom which contained student records and testing materials. Student A.W. allegedly transmitted certain

documents from that unauthorized entry to Defendant Cunningham-Nixon
without Plaintiff's knowledge or consent.  See Attachment #10.

57.  Defendant Cunningham Nixon pressured Plaintiff to change A.W.  grade
so she could be in the top 10% of graduating students.  The grade had to be
any grade high enough to get A.W., in the top 10%.  Plaintiff refused.
Defendant Cunningham Nixon became visibly angry and exclaimed, "Are
you going to do it or aren't you, I am tired of asking you to do it."  Plaintiff
said, "No, I am not going to do it."   Defendant got up and exclaimed this
meeting is over and walked out of the room. Witnesses were present.
Defendants Cunningham Nixon and Mckenzie tried to engineer the grades
to affect the class ranking of students.   A.W's., grade change would have
resulted in other students being harmed.

58. By information and knowledge, student A.W. carried around the school
building a petition to improve employment prospects for Defendants
McKenzie and Cunningham-Nixon.  During work hours, it asked teachers
to sign on behalf Defendants Cunningham-Nixon and McKenzie to be the
next Principal at Anacostia SHS!  Using a student in this fashion violates
DCPS rules and regulations.  It also sabotages and undermines DCPS
Principal selection process thereby denying Plaintiff a legitimate voice.

Plaintiff was not given an opportunity to sign such a petition.  Other

teachers reported they felt required to sign if they wanted to ensure good

IMPACT evaluations.

59.  Plaintiff believed Defendants efforts were "payback" to A.W., for making

possible job prospects for Defendants.

60.  Grade changes have to be strictly regulated especially in the K-12

environment.  In 2003, John T. Jones was an attendance counselor and

teacher at Ballou SHS who was found guilty of manipulating three female

students with grade changes in exchange for sexual favors.

61.  Anacostia student O.B., an African American male 12th grader, was a

chronically absent student except during the High School basketball season.

Plaintiff made it crystal clear to O.B., his girlfriend, and guardians if he did

not attend the class he would fail.  O.B. did not heed Plaintiff's numerous

warnings.  He failed in attendance and failed because he did not complete

the work.  He and his friend came to plaintiff's classroom engaged in an

assault as defined by DC Criminal Code.  Plaintiff asked the hallway

surveillance camera and security incident report created and preserved.

62.  Defendants intentionally disregarded or were deliberately indifferent to

the unsafe conditions in the classroom.  Sometimes they promoted unsafe

conditions to intimidate or coerce Plaintiff or other teachers.  Defendants

deliberate indifference surfaced with both inadequate training and

inadequate supervision.  DCPS via the Defendants knew of safety risks and

failed to train, supervise or effectively discipline.  Defendants turned away

from their responsibilities to address the situation.  Plaintiff has a substantial

interest in the way the Defendants discipline students and provide security

services.  Plaintiff and other teachers need to be protected from assault

which would assist them in performing their function.

63.  Fear of assault is one of the principle reasons teachers pass students who

have not otherwise passed the course.  Teachers know about Spingarn High

teacher Lynda Tredway, who on May 5, 1975, was alone grading papers

after school.  Two males entered her classroom, locked the door, tied and

gagged, rob, assaulted and raped her!

64.  Plaintiff has not returned to Anacostia SHS as it is an unsafe work

environment.  Defendants have not provided a safe workplace.

Furthermore, Plaintiff believes Defendants Mckenzie and Cunningham-

Nixon conspired to place Plaintiff and O.B., together knowing the probable

results would be violence.  Plaintiff said earlier he did not want to be alone

with O.B.  The student or the Plaintiff could have been hurt, and they would

shoulder the blame as opposed to the Defendants who set up the scenario.

O.B., should have not been provided a senior clearance sheet or told,

"Saunders was the only one standing in your way!"

65. Defendants tried to persuade Plaintiff to change O.B., grade by:

1.   Demanding O.B., be allowed another opportunity to take the final
exam which Defendant Mckenzie would administer.   Plaintiff refused
and conducted the exam himself.

2.   Arguing O.B., completed work but Plaintiff lost it.

3.   Arguing Plaintiff did not grade O.B., work.

4.   Claiming O.B., could not be failed because not enough telephone calls
were made to his home.

5.   Arguing O.B., could not be failed because the Plaintiff violated the
school handbook policy.

6.   Arguing O.B., could not be failed because a Student Support Plan had
not been completed.

66. 5-E DCMR §2200.4 and the Washington Teacher's Union  Collective

Bargaining Agreement declare "the primary responsibility for evaluating the

work of the student shall rest with the teacher." Attendance related grading

which includes "seat hours" are codified in DC education law.   DC is not

unusual in affirming the grade belongs to the teacher. "Grades must be given by teachers in the classroom, just as cases are decided in the courtroom . . . teachers, therefore, must be given broad discretion to give grades. . ." Settle v. Dickson County School Board, 53 F.3d 152 (6th Cir. 1995).

67. Some states have laws that regulate grade changes, at least in the K-12 context. Eureka Teachers Ass'n v. Board of Educ., 244 Cal. Rptr. 240 (Cal. App. 1988): The state appellate court ruled that a state statute, which provides that a teacher's grade is final, absent clerical or mechanical mistake, fraud, bad faith, or incompetence, required the board of education to render findings of fact to change grades. The court further stated "bad faith against a professional is a serious challenge to [the teacher's] integrity and professional reputation."

68. Georgia law (2010)20-2-989.20.) gives voice to, "No  classroom  teacher shall  be  required,  coerced,  intimidated,  or  disciplined  in  any  manner by the  local  board  of  education,  superintendent,  or  any  local  school administrator  to  change  the  grade  of  a  student."

69. Plaintiff was denied said benefits, via a weaponized IMPACT rating, because he publicly spoke against specific grading practices and procedures

which he knew to be contrary to the public interest in addition to the Federal and District of Columbia law. Plaintiff spoke out, verbally and in writing, at staff and union meetings. Defendants weaponized the IMPACT teacher evaluation system against the Plaintiff to retaliate, silence and control his protected speech as the teacher, union member, and government employee.

70. Defendants efforts to control Plaintiff's grading of student work, awarding grades and his speech also created a hostile and dangerous work environment. Certain Defendants created and supported a culture of students would be given a high school diploma "no matter what." Plaintiff's efforts to enforce DCPS rules of school and class attendance, a student production of work, and reasonable work efforts were met with threats of physical violence from individual students and parents. The public interest, DC and Federal law are consistent with awarding High School diplomae to students who have attended classes and performed the class work satisfactorily. It is settled law nationally and locally.

71. Defendants personally benefited from private bonus contracts tied to increased graduation rates. Defendants simultaneously installed specific penalties within the IMPACT teacher evaluation system against Plaintiff,

and other teachers to achieve their goals. Defendants enriched themselves at the expense of DC Taxpayers and students. Defendants bonus agreements diminish the quality of education DC students receive. Plaintiff, a government employee, is not bound to serve the administrators private interest but to the law and students under the doctrine of In Loco Parentis.

72. Plaintiff was denied a proper evaluation by the biased and prejudiced defendants. Said lowering of his rating caused him to suffer the loss of his annual step increase and other benefits and opportunities, work in a hostile and dangerous environment, suffer the loss of income from an ECR position that he would otherwise be employed.

# CLAIMS FOR RELIEF

## CLAIM ONE:

# Violation of the Fifth Amendment of the U.S.

# Constitution

Plaintiffs incorporate by reference the factual allegations in the foregoing paragraphs.

Defendants action violates Plaintiffs' rights under the United States Constitution and those of his students. The United States Supreme Court in Bolling v. Sharpe held that the Due Process Clause of the Fifth Amendment applies to the Washington DC and incorporates the Equal Protection Clause. Segregation in public education is an arbitrary deprivation of liberty in violation of the Due Process Clause. Students who are sent to Anacostia SHS or attend it as their neighborhood school have their education rights abridged as a result of Defendants maintenance of an academic program that does not comply with the law.

## CLAIM TWO:

# Breach of Contract - Violation of the Washington Teachers Union Collective Bargaining Agreement.

Plaintiffs incorporate by reference the factual allegations in the foregoing paragraphs.

Defendants violated broad sections of the collective bargaining agreement including but not limited to prohibitions against burdensome administrative and clerical paperwork; the teachers right to grade; progressive discipline doctrine.

## CLAIM THREE:

## DC Administrative Procedures Act

Plaintiffs incorporate by reference the factual allegations in the foregoing paragraphs.

Plaintiff sues the District of Columbia under the D.C. Administrative Procedures Act.

Defendant Jane Spence's SY15-16 DCPS Secondary School Grading and Reporting Policy ("Grading Policy") is arbitrary, capricious and otherwise not in accordance with law under the D.C. Administrative Procedure Act, D.C.

Code § 2-510(a)(3)(A); contrary to constitutional right, power, privilege, or immunity under the D.C. Administrative Procedure Act, id. § 2-510(a)(3)(B); and in excess of statutory authority or short of statutory rights under the D.C. Administrative Procedure Act, id. § 2-510(a)(3)(C). Defendants lack statutory authority to enforce in the District of Columbia.

Defendants failed to conduct notice-and-comment rule making.

# CLAIM FOUR:

# DC Whistleblower Protection Act

Plaintiffs incorporate by reference the factual allegations in the foregoing paragraphs.

Plaintiff sues the District of Columbia under the D. C. Whistleblower Protection Act, as Defendants were unlawfully lowered his Impact evaluation in retaliation for disclosures he made concerning 2015 DCPS Grading Policy, Chronic Absenteeism, the Response to Intervention and accusing his superiors of gross mismanagement in the workplace.

Plaintiff's Impact score and loss of privileges were illegal acts of retaliation under the D.C. Whistleblower Protection Act, D.C. Code § 1-615.51 et seq. (DCWPA)

The purpose of the District of Columbia's Whistleblower Act is "to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it." Wilburn v. District of Columbia, 957 A.2d 921, 925 (D.C. 2008)(emphasis omitted). The Whistleblower Act thus is designed to combat serious misconduct-changing or tampering with teacher grade , abuses of governmental authority such as weaponizing IMPACT, or waste of public resources by creating an environment in which government employees who witness wrongdoing feel safe coming forward and are protected from retaliation.

## CLAIM FIVE:

## Conspiracy to commit fraud

Plaintiffs incorporate by reference the factual allegations in the foregoing paragraphs.

Defendants Fraser, Cunningham-Nixon, and Mckenzie conspired to change, falsify, or alter the grades and other records of Plaintiff and Anacostia SHS students in violation of DC law.

# CLAIMS FOR RELIEF

## CLAIM SIX:

# Violation of the Fourteenth Amendment of the U.S. Constitution

Plaintiffs incorporate by reference the factual allegations in the foregoing paragraphs.

Defendants action violate Plaintiffs' rights under the United States Constitution against deprivation of life, liberty, or property without due process. Plaintiff has been denied equal protection of the law. Plaintiff has the right to report a crime or protect himself from a crime.

# CLAIM SEVEN:

# Violation of the Fourth Amendment of the U.S. Constitution

Plaintiffs incorporate by reference the factual allegations in the foregoing paragraphs.

Defendants action violated Plaintiffs' rights against unreasonable search and seizure of his personal possessions, files, and intellectual property.

.

# Prayer for Relief

Wherefore the Plaintiff respectfully requests the following relief:

a.  Appoint a Special Master to manage/coordinate reduction of Chronic
    Absent Students with a budget not to exceed $10 million for the next 5
    years.  Funding shall reduce the DCPS administrative budget but not any
    individual local school budgets.

b.  Fine, Suspend, and/or Remove administrative and teacher licenses of
    parties found in violation of the law.

c.  Fine Defendants Fraser, McKenzie and Cunningham-Nixon $75,000
    each.

d.  Terminate school personnel from employment who have altered, coerced,
    harassed, or intimated teachers to change grades.

e.  Declaratory judgement against Defendants declaring SY15-16 DCPS
    Secondary School Grading and Reporting Policy ("Grading Policy")
    unlawful and set aside any action or findings and conclusions found
    to be (A) arbitrary, capricious, and abuse of discretion, or otherwise
    not in accordance with law; (B) contrary to constitutional right,
    power, privilege, or immunity; (C) in excess of statutory jurisdiction,
    authority, or limitations or short of statutory rights; and (D) without

observance of procedure required by law, including any applicable procedure provided by the DC Administrative Procedures Act;

f.  Court Order Defendants to produce and distribute uniform procedures for viewing surveillance cameras with clearly stated rights of employees who believe they are the victim of workplace crimes.

g.  Court Order Defendants to produce and distribute uniform procedures to access security incident reports.

h.  Court Order the elimination of administrative bonuses for increased graduation rates.

i.  Court Order appointment of legal counsel for plaintiff as issues contained in complaint are public interest/public education in general.  Other teachers across the school system have documented similar concerns with high percentages of high school graduates who are deficient in basic skills or unprepared.

j.  Grant Plaintiff reasonable attorneys fees and costs.

k.  Court Order system wide training for a school personnel on promotion, grading, and attendance laws.

l.   Court Order all schools to publish uniform promotion, grading, and
     attendance laws and modify documents to include but not limited to
     school handbooks accordingly.

m.   Court Order that the grade falls exclusively in the domain of the teacher.
     A teacher's grade is final, absent clerical or mechanical mistake, fraud, bad
     faith, or incompetence and require the board of education to render
     findings of fact to change grades.

n.   Court Order it is against the law to coerce, intimidate or deceive a teacher
     with false information to change a student grade.

o.   Court Order the DC Government to pay one year of per pupil student
     payment or $15,000 whichever is greater for remediation to any college or
     vocational training program.   DCPS high school graduates of schools
     where chronic absenteeism existed and High School Diplomas were
     issued shall be eligible recipients only.   Payment shall be for classes to
     remediate the student's low skill level.

p.   Court Order DCPS complete a review of the Anacostia SHS security
     program and staff for compliance with DCPS policy and procedures.
     Training shall be provided to emphasize equal protection and services to
     all staff.

q.  Void Plaintiff's 2016/2017 Final Impact rating.  Restore all rights, privileges, and benefits the Plaintiff would have received.

r.  Void Plaintiff's 2017/2018 Impact ratings.  Restore all rights, privileges, and benefits the Plaintiff would have received.

s.  Court order Plaintiff's 2015/2016 Impact rating of effective be Plaintiff's last valid rating.

t.  Grant make whole relief, including but not limited to compensatory, general and punitive damages.

u.  Grant any other relief as the court may deem necessary.

Date: June 15, 2018                    Respectfully Submitted,

Nathan A. Saunders

13511 Yellow Poplar Lane

Brandywine, Maryland 20613

Nasaunders@aol.com

202-213-7081